UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREA M. CHILDRESS, | Case No. 1:12-cv-1529-TWP-DKL |
| Plaintiff, | Judge Tanya Walton Pratt |
| v. | Magistrate Judge Denise K. LaRue |
| EXPERIAN INFORMATION SERVICES, INC.; and CSC CREDIT SERVICES, INC., | |
| Defendants. | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
## BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

Page

NATURE OF THE CASE ................................................................................................. 1

BACKGROUND ............................................................................................................. 4

I.    THE LEGAL LANDSCAPE ................................................................................. 4

    A.    The Fair Credit Reporting Act ................................................................... 4

    B.    Chapter 13 of the U.S. Bankruptcy Code ................................................. 5

II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE............................... 6

    A.    The Parties ................................................................................................. 6

    B.    Consumer Bankruptcy Information ........................................................... 6

        1.    Bankruptcy Information is Publicly Available on PACER ...................... 7

        2.    Lexis Collects Bankruptcy Information from PACER ............................. 8

        3.    Experian Reports Bankruptcy Information Collected from PACER......... 9

        4.    Dispute Resolution Procedures ................................................................ 9

    C.    Plaintiff's Chapter 13 Bankruptcy Case ................................................. 10

        1.    The Bankruptcy Court Dismissed The Case........................................... 10

        2.    Experian Reported That Plaintiff's Bankruptcy Case Was
           Dismissed........................................................................................ 11

    D.    Plaintiff's Two Disputes With Experian.................................................. 12

        1.    The July 2009 Dispute ............................................................................ 12

        2.    The August 2012 Dispute ....................................................................... 13

III.  PLAINTIFF'S CLAIMS AGAINST EXPERIAN............................................... 13

SUMMARY JUDGMENT STANDARD ...................................................................... 14

ARGUMENT................................................................................................................. 15

I.    PLAINTIFF CANNOT ESTABLISH ANY OF HER CLAIMED VIOLATIONS
    OF THE FCRA ................................................................................................... 15

**TABLE OF CONTENTS**
(continued)

Page

A.  Plaintiff Never Triggered Any Bankruptcy Reporting Obligation ..................... 16

B.  The FCRA Does Not Require Experian to Use the Word "Withdrawn"............. 18

C.  The FCRA Does Not Require Experian to Report Any Other Details
    About the Bankruptcy.......................................................................................... 22

D.  Experian Cannot Be Liable For Reporting What The Public Record Said.......... 24

II.  PLAINTIFF CANNOT ESTABLISH WILLFULNESS ................................................. 25

A.  The Requirement of Willfulness ......................................................................... 25

B.  Experian's Conduct, Policies, and Procedures Were Objectively
    Reasonable .......................................................................................................... 26

III.  PLAINTIFF'S REINVESTIGATION CLAIMS FAIL AS A MATTER OF LAW
     ON INDEPENDENT GROUNDS................................................................................... 29

CONCLUSION.................................................................................................................... 31

# TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)............................................................................................15

*Baker v. Equifax Info. Servs.*,
  346 F. App'x 219 (9th Cir. 2009) ......................................................................22

*Beery v. Turner (In re Beery)*,
  680 F.2d 705 (10th Cir. 1982) ...........................................................................20

*Bentley v. Boyajian (In re Bentley)*,
  266 B.R. 229 (B.A.P. 1st Cir. 2001) ..................................................................24

*Bermudez v. Equifax Info. Servs., LLC*,
  No. 07-CV-1492, 2008 WL 5235161 (M.D. Fla. Dec. 15, 2008)...........................29

*Beyer v. Firstar Bank N.A.*,
  447 F.3d 1106 (8th Cir. 2006) ...........................................................................21

*Bittick v. Experian Info. Solutions, Inc.*,
  419 F. Supp. 2d 917 (N.D. Tex. 2006) ...............................................................29

*Byas v. United States*,
  182 F.2d 94 (D.C. Cir. 1950)..............................................................................21

*Cahlin v. General Motors Acceptance Corp.*,
  936 F.2d 1151 (11th Cir. 1991) .........................................................................21

*Collins v. American Red Cross*,
  715 F.3d 994 (7th Cir. 2013) .............................................................................15

*Crawford v. Countrywide Home Loans, Inc.*,
  647 F.3d 642 (7th Cir. 2011) .............................................................................15

*DeAndrade v. Trans Union LLC*,
  523 F.3d 61 (1st Cir. 2008)................................................................................21

*Duncan v. Walker*,
  533 U.S. 167 (2001)...........................................................................................16

*Fed. Aviation Admin. v. Cooper*,
  132 S. Ct. 1441 (2012)........................................................................................19

**TABLE OF AUTHORITIES**
(continued)

Page

*Gonzalez v. Experian Info. Solutions, Inc.*,
  No. 04-CV-00912, 2005 WL 925657 (D. Utah Apr. 20, 2005)...............................................24

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
  545 U.S. 409 (2005)..................................................................................................................20

*Grays v. Trans Union Credit Info. Co.*,
  759 F. Supp. 390 (N.D. Ohio 1990).................................................................................24-25

*Hancock v. Charter One Mortg.*,
  No. 07-15118, 2008 WL 2246042 (E.D. Mich. May 30, 2008) ............................................29

*Harris v. Experian Info. Servs.*,
  No. 06-cv-1808, Dkt. 201 (D.S.C. June 30, 2009) .........................................................16, 18

*Henson v. CSC Credit Servs.*,
  29 F.3d 280 (7th Cir. 1994) ...................................................................................................24

*Hutchinson v. Del. Sav. Bank FSB*,
  410 F. Supp. 2d 374 (D.N.J. 2006) ........................................................................................23

*In re Amburgey*,
  68 B.R. 768 (Bankr. S.D. Ind. 1987) .......................................................................................5

*In re Dick*,
  No. 05-80347, 2006 WL 6544157 (Bankr. N.D. Tex. May 19, 2006) .......................... 14, 29-30

*In re Ellis*,
  406 B.R. 736 (Bankr. E.D. Va. 2009).........................................................................5, 18, 20

*In re Jacobs*,
  43 B.R. 971 (Bankr. E.D.N.Y. 1984)......................................................................................22

*In re Momenta, Inc.*,
  455 B.R. 353 (Bankr. D.N.H. 2011) ................................................................................ 19-20

*In re Salem*,
  465 F.3d 767 (7th Cir. 2006) ..................................................................................................24

*In re Unified Messaging Solutions, LLC Patent Litig.*,
  MDL No. 2371, 2013 WL 5405698 (N.D. Ill. Sept. 25, 2013) ................................................7

*In re Witkowski*,
  16 F.3d 739 (7th Cir. 1994) ......................................................................................................5

**TABLE OF AUTHORITIES**
(continued)

Page

*Jacobsen v. Moser,*
609 F.3d 647 (5th Cir. 2010) ..................................................................6

*LaBella Winnetka, Inc. v. Village of Winnetka,*
628 F.3d 937 (7th Cir. 2010) ..................................................................7

*Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,*
298 F.3d 600 (7th Cir. 2002) ..................................................................7

*Long v. Tommy Hilfiger U.S.A., Inc.,*
671 F.3d 371 (3d Cir. 2012)...................................................................28

*Lowry v. McMillan,*
8 Pa. 157 (1848).....................................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986)...............................................................................15

*McPhee v. Chilton Corp.,*
468 F. Supp. 494 (D. Conn. 1978).........................................................20

*Moore v. First Adv. Enter. Screening Corp.,*
No. 12-CV-00792, 2013 WL 1662959 (N.D. Ohio Apr. 17, 2013)........................................ 30

*Murray v. New Cingular Wireless Servs., Inc.,*
523 F.3d 719 (7th Cir. 2008) ...........................................................25, 26

*Newsom v. Friedman,*
76 F.3d 813 (7th Cir. 1996) ...................................................................19

*Prudence Mutual Casualty Co. v. Sturms,*
185 N.E.2d 366 (Ill. App. 1962) ............................................................19

*Roberts v. Sea-Land Servs., Inc.,*
132 S. Ct. 1350 (2012)............................................................................16

*Safeco Ins. Co. of Am. v. Burr,*
551 U.S. 47 (2007).............................................................4, 25, 26, 27, 28

*Sarver v. Experian Info. Solutions,*
390 F.3d 969 (7th Cir. 2004) .................................................................21

*Saunderson v. Gary Goldberg & Co.,*
899 F. Supp. 177 (S.D.N.Y. 1995) ........................................................19

## TABLE OF AUTHORITIES
### (continued)

                                                                                      Page

*Shannon v. Experian Credit Co.*,
     No. 08-11281, 2008 WL 2478324 (E.D. Mich. June 17, 2008) ...............................................29

*Shlahtichman v. 1-800 Contacts, Inc.*,
     615 F.3d 794 (7th Cir. 2010) .........................................................................................26, 28

*Spence v. TRW, Inc.*,
     92 F.3d 380 (6th Cir. 1996) (per curiam)...............................................................................21

*State v. Strickland*,
     400 A.2d 451 (Md. Ct. Spec. App. 1979) ..............................................................................19

*Stern v. Barnett (In re Stern)*,
     452 F.2d 211 (7th Cir. 1971) .................................................................................................20

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
     451 U.S. 630 (1981)................................................................................................................20

*TRW Inc. v. Andrews*,
     534 U.S. 19 (2001).................................................................................................................16

*United States v. Blechman*,
     657 F.3d 1052 (10th Cir. 2011) ...............................................................................................7

*United States v. Masters*,
     924 F.2d 1362 (7th Cir. 1991) ...............................................................................................19

*United States v. Peace*,
     48 F. 714 (C.C.E.D.N.C. 1892) .............................................................................................20

*United States v. Zucca*,
     351 U.S. 91 (1956).................................................................................................................16

*Van Straaten v. Shell Oil Prods. Co.*,
     678 F.3d 486 (7th Cir. 2012) ...........................................................................................25, 28

*Woodman v. Concept Constr., LLC (In re Woodman)*,
     698 F.3d 1263 (10th Cir. 2012) .............................................................................................20

**STATUTES**

11 U.S.C. § 109.................................................................................................................................5

11 U.S.C. § 349(a) ...........................................................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

11 U.S.C. § 350 ..................................................................................................11

11 U.S.C. § 1301 ..................................................................................................5

11 U.S.C. § 1307 ...............................................................................5, 6, 19, 20, 23

11 U.S.C. §§ 1323-1326 .......................................................................................5

15 U.S.C. § 1681(a)(1) ........................................................................................21

15 U.S.C. § 1681c ...................................................................................... *passim*

15 U.S.C. § 1681e ..........................................................................................4, 21

15 U.S.C. § 1681i .....................................................................................4, 29, 30

15 U.S.C. § 1681n .......................................................................................14, 25

15 U.S.C. § 1681o ..............................................................................................14

15 U.S.C. § 1681p ..............................................................................................29

**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (9th ed. 2009) ....................................................18, 19

Federal Rule of Bankruptcy Procedure 1014 ........................................................6

Federal Rule of Bankruptcy Procedure 1017 ........................................................6

Federal Rule of Bankruptcy Procedure 3006 ......................................................19

Federal Rule of Bankruptcy Procedure 5006 ......................................................17

Federal Rule of Bankruptcy Procedure 5011 ......................................................19

Federal Rule of Civil Procedure 56 ...............................................................14-15

Federal Rule of Evidence 902(4) .......................................................................17

Federal Trade Commission, *Statement of General Policy or Interpretation,*
*Commentary on the Fair Credit Reporting Act,*
16 C.F.R. pt. 600, Appx., 55 Fed. Reg. 18804-01 (May 4, 1990) ....................12, 28

**TABLE OF AUTHORITIES**
(continued)

Page

Jacqueline S. Akins, *Fair Credit Reporting—The New Look*,
    52 CONSUMER FIN. L.Q. REP. 324 (1998)................................................................17

Peter Alexander, *Identity Theft and Bankruptcy Expungement*,
    77 AM. BANKR. L.J. (Fall 2003)....................................................................14, 30

United States Bankruptcy Court for the Northern District of Indiana,
    Local Rule B-1017-1.....................................................................................6

## NATURE OF THE CASE

This is a putative class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). The sole plaintiff, Andrea Childress, claims that Experian willfully violated the FCRA by reporting her Chapter 13 bankruptcy, which indisputably was "dismissed" by the court, as having been "dismissed" by the court. Plaintiff argues that because the bankruptcy was dismissed per her request by way of a "motion to dismiss," Experian should have reported her dismissed bankruptcy as having been "withdrawn" rather than "dismissed."

The story begins in October 2005, when Plaintiff and her then-husband filed for Chapter 13 bankruptcy. They proposed a reorganization plan about a month later, but the bankruptcy court rejected it. In the order rejecting their plan, the bankruptcy court stated that if Plaintiff and her husband did not file a new amended plan by February 27, 2006, the case "will" be dismissed. Rather than file a new reorganization plan, in March 2006, after the February 27, 2006 deadline had come and gone and the case was subject to immediate dismissal, Plaintiff and her husband filed a "motion to dismiss" in which they asked the court "to dismiss their Chapter 13 bankruptcy." The court granted the motion, ordering that "[t]his chapter 13 case is dismissed." The federal bankruptcy docket reads in the top right corner: **"DISMISSED, CLOSED."**

It should come as no surprise, then, that Experian accurately indicated in Plaintiff's consumer credit file that her bankruptcy had been "dismissed." Through a public records vendor, Experian continuously collects and processes consumer bankruptcy information directly from federal bankruptcy dockets, all of which are publicly available online. In short, to maximize accuracy, Experian reports the disposition of bankruptcy cases as they are reported by the federal bankruptcy courts themselves. In Plaintiff's case, the bankruptcy court reported her

case as "dismissed," and so did Experian.  There was no reporting error: her bankruptcy was dismissed and the reporting was indisputably accurate.

But Plaintiff contends that Experian should have reported her dismissed bankruptcy as "withdrawn."  She claims that there is some material import to the fact that she happened to ask the court to dismiss her petition before the court itself would have dismissed petition as promised.  But the word "withdrawn" does not appear on the bankruptcy docket or in the underlying bankruptcy court orders, and the legal and procedural hoops jumped through that resulted in the ultimate dismissal are both irrelevant to the question of final disposition and not something Experian, or its vendor, are qualified to identify or interpret.

Moreover, "withdrawn" is not a disposition or term even recognized by the federal bankruptcy courts.  Under Chapter 13, a debtor cannot "withdraw" her case; that term does not exist.  She may instead seek a dismissal, which requires a court order.  Plaintiff nonetheless latches on to an FCRA provision that uses the word "withdrawn" in reference to bankruptcies, and she claims that this provision requires Experian to report her bankruptcy as "withdrawn," notwithstanding what the public records show and notwithstanding the fact that "withdrawn" is not a term used by bankruptcy courts.  The FCRA is not a substantive bankruptcy statute, and its use of "withdrawn," a term which does not exist in the bankruptcy world, surely means "dismissed," which is the term actually used by the courts.

Regardless, even if Plaintiff's reading of the FCRA provision were plausible—that there were some material difference between a bankruptcy that is dismissed because of a debtor's request and one that is dismissed because the debtor failed to certify a plan and let the case linger—the reporting requirement in the FCRA that Plaintiff relies on is expressly triggered *only* when the consumer reporting agency ("CRA") receives "documentation certifying withdrawal,"

a phrase and a requirement that Plaintiff's Complaint and her Motion for Class Certification totally ignore.   But here, even assuming "withdrawal" means what Plaintiff says it means, Experian never received "documentation certifying withdrawal," and thus there was no requirement for Experian to use the precise word "withdrawn" as Plaintiff urges.

In sum, Plaintiff's entire lawsuit rests on a peculiar and improper reading of one clause of one sentence in the FCRA—a reading never before given or suggested by any court, the Federal Trade Commission ("FTC"), the Consumer Financial Protection Bureau ("CFPB"), or any consumer reporting agency.   It is a reading that would require this Court and Experian (and the entire credit reporting industry) to both adopt a legal term for the disposition of a bankruptcy that is not recognized by the bankruptcy courts themselves, and to engage in legal analysis of actual court filings to make a determination as to whether Plaintiff's proposed term should apply in any given instance.   To reach her desired result, Plaintiff asks this Court to read the first half of the clause at issue with the absolute strictest of constructions, but to then completely ignore the second half.   Plaintiff's reading is at odds with general rules of statutory construction, with basic logic and reason, with the terminology actually used by the bankruptcy courts, and by standard practice in the credit reporting industry for decades.   Nevertheless, and in an effort to pursue class treatment, Plaintiff urges that Experian willfully violated the FCRA by not adopting her strained and unique reading of this clause.   Plaintiff is wrong as a matter of law for numerous reasons, and her Complaint should be summarily dismissed.

## BACKGROUND

### I.      THE LEGAL LANDSCAPE.

This case arises under the FCRA and involves Experian's reporting of Plaintiff's Chapter 13 bankruptcy case.   For background, this brief begins with an overview of the pertinent provisions of the FCRA and the U.S. Bankruptcy Code, both of which are central to this case.

####       A.      The Fair Credit Reporting Act.

The FCRA seeks "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).   The Act generally requires a CRA to use reasonable procedures to ensure maximum possible accuracy of consumer credit information, *see* 15 U.S.C. § 1681e, and to reasonably investigate consumer disputes about the accuracy of credit information, a process called "reinvestigation," *see id.* § 1681i.   Additionally, the Act governs the content of consumer reports and to whom and for what purpose the reports may be furnished. *See, e.g., id.* §§ 1681b, 1681c.

Under the FCRA, a CRA may report information relating to consumer bankruptcies. Pertinent here, § 1681c(d)(1) provides as follows:

> **Title 11 Information**.   Any [CRA] that furnishes a consumer report that contains information regarding any case involving the consumer that arises under Title 11 shall include in the report an identification of the chapter of such Title 11 under which such case arises if provided by the source of the information.   If any case arising or filed under Title 11 is <u>withdrawn</u> by the consumer before a <u>final judgment</u>, the [CRA] shall include in the report that such case or filing was <u>withdrawn</u> <u>upon receipt of</u> <u>documentation certifying</u> such <u>withdrawal</u>.

*Id.* § 1681c(d)(1) (underline added).   This case involves the meaning of "withdrawn," "final judgment," and "documentation certifying," as used in the second sentence of the provision.   For background, the provision was borne out of the Consumer Credit Reporting Reform Act of 1996, enacted as part of the Omnibus Consolidated Appropriations Act of 1997, Pub. Law 104-208,

110 Stat. 3009, a gigantic law following the 1996 government shutdown.  There is little pertinent legislative history.  *E.g.*, H. REP. NO. 103-486, at 36 (1994); S. REP. NO. 103-209, at 15 (1993); H. REP. NO. 102-692 (1992).  In this case, Plaintiff contends, without any support, that the word "withdrawn" means a bankruptcy that was dismissed "voluntarily" by way of the debtor's motion to dismiss and not one that was dismissed some other way.  (*See generally* Plaintiff's Motion for Class Certification, Dkts. 69, 70.)  She also contends, again without any support, that "before final judgment" means "before plan confirmation."  (*Id.*)  Plaintiff ignores the phrase requiring "receipt of documentation certifying such withdrawal."  (*Id.*)

### B.    Chapter 13 of the U.S. Bankruptcy Code.

The U.S. Bankruptcy Code provides for six types of bankruptcies.  *See* 11 U.S.C. chs. 7, 9, 11, 12, 13, 15.  In Chapter 13, at issue here, a debtor with regular income may keep her assets and propose a "plan" to pay creditors over time.  *See id.* §§ 109(e), 1301-30; *In re Witkowski*, 16 F.3d 739, 740 (7th Cir. 1994).  Chapter 13 bankruptcies are by definition voluntary.  *See In re Amburgey*, 68 B.R. 768, 773-74 (Bankr. S.D. Ind. 1987).

The debtor's plan must comply with certain statutory requirements and be approved by the bankruptcy court.  *See* 11 U.S.C. §§ 1324-25.  If the court approves the plan (meaning, confirms it), the Chapter 13 trustee will distribute funds received under the plan, only after which all debts will be "discharged."  *Id.* § 1326(a)(2).  If the court rejects the plan (meaning, denies confirmation), the debtor may propose a new or modified plan.  *See id.* § 1323.  The court may dismiss the case if the debtor does not propose a new plan in the time allotted by the court.  *Id.* § 1307(c)(5).

"The Bankruptcy Code does not speak of a right to withdraw a petition.  [It] speaks only of a right to dismiss a petition under certain circumstances."  *In re Ellis*, 406 B.R. 736, 739 (Bankr. E.D. Va. 2009).  Under § 1307, a debtor may move to dismiss at any time, and the court

"shall dismiss" the case, so long as the case had not been previously converted. 11 U.S.C. § 1307(b). Despite the word "shall," bankruptcy courts have discretion to deny dismissal in exceptional circumstances. *See Jacobsen v. Moser*, 609 F.3d 647, 660 (5th Cir. 2010).

Dismissal may come about in other ways, too. An interested party, like a creditor or trustee, may move to dismiss for certain enumerated reasons. *See* 11 U.S.C. § 1307(c). And the bankruptcy court may *sua sponte* dismiss a case for any number of reasons, including improper venue, failure to pay required filing fees, failure to timely file a list of creditors, or failure to file a new plan after denial of plan confirmation. Fed. R. Bankr. P. 1014(b), 1017(b)(1), 1017(c); *see also, e.g.*, Bankr. N.D. Ind. Local Rule B-1017-1. In general, a dismissal (no matter the reason for it) is without prejudice. *See* 11 U.S.C. § 349(a).

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.

### A. The Parties.

Plaintiff Andrea M. Childress is a "consumer," and Defendant Experian is a "consumer reporting agency" under the FCRA. (Compl. & Ans. ¶¶ 1-2.) As a CRA, Experian collects consumer credit information from various sources, organizes and stores the information, and then makes it available to authorized third parties, like lenders. (*Id.* ¶ 21.) Experian maintains credit information about Plaintiff. (*Id.* ¶ 9.)

### B. Consumer Bankruptcy Information.

Public records, including court dockets, are an important source of consumer credit information. (Declaration of Patricia Finneran ("Finneran Decl.") ¶ 5, attached as Ex. A.) These records can reveal civil judgments, tax liens, and consumer bankruptcies, all of which have obvious credit implications. (*Id.*) Experian includes public record bankruptcy information in consumer reports that it furnishes to third parties. (*Id.* ¶ 7.)

### 1.    Bankruptcy Information is Publicly Available on PACER.

Consumer bankruptcy information is publicly available online through PACER, an acronym for the Public Access to Court Electronic Records system.  PACER is "a service of the United States Judiciary" that "is operated by the Administrative Office of the United States Courts."  (PACER Frequently Asked Questions, *available at* http://www.pacer.gov/psc/faq.html (last visited Feb. 11, 2014), attached as Ex. B.)[1]  Specifically, PACER is "an electronic public access service that allows users to obtain case and docket information from Federal Appellate, District and Bankruptcy courts."  (*Id.*)  Because "[e]ach court maintains its own databases with case information," for each jurisdiction, "the format and content of the information may differ slightly."  (*Id.*)  "PACER provides access to the case summary, the docket entries, and in many jurisdictions copies of documents filed in federal cases."  (*Id.*)

In bankruptcy cases, the face of the electronic docket identifies, among other things, the debtor, case number, court, bankruptcy chapter, and current status.  (*See id.*)  For most cases and in most jurisdictions, the docket also includes links to all public filings.  (*See id.*)  As a general matter, PACER recognizes three current statuses of a bankruptcy: filed, dismissed, and discharged.  (*See* Deposition of Kelly Pascual ("Pascual Dep.") 22:14-19, attached as Ex. C.)  There is no PACER designation for a so-called "withdrawn" bankruptcy; indeed, federal bankruptcy dockets do not use that term as a potential bankruptcy disposition.  (*See id.*; Finneran Decl. ¶ 13.)

---

[1] The Court may take judicial notice of government websites.  *E.g.*, *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (local government website) (citing *Denius v. Dunlap*, 330 F.3d 919, 926 n.4 (7th Cir. 2003) (official personnel records website)); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (FDIC website); *In re Unified Messaging Solutions, LLC Patent Litig.*, MDL No. 2371, 2013 WL 5405698, at *1 n.4 (N.D. Ill. Sept. 25, 2013) (United States Patent and Trademark Office website printouts).  For other courts discussing PACER, see, for example, *United States v. Blechman*, 657 F.3d 1052, 1058 n.5 (10th Cir. 2011).

## 2.   Lexis Collects Bankruptcy Information from PACER.

Experian obtains its consumer bankruptcy information from LexisNexis Risk & Information Analytics Group, Inc. ("Lexis"), a global leader in information services. (*See* Pascual Dep. 26:4-27:17.) In his capacity as a Rule 30(b)(6) corporate witness, a Lexis vice president explained, "At a high level, what we do is aggregate certain types of public record into standardized databases that we provide to our customers in a standardized format." (Deposition of Lexis 30(b)(6) Witness ("Lexis Dep.") 8:3-5, attached as Ex. D.) PACER is the source of all of the consumer bankruptcy information that Lexis collects. (*Id.* 8:25-9:6.)



████████████████████████████████████████████ Moreover, not only does each bankruptcy case "have hundreds and hundreds of different attributes," but reporting procedures vary from district to district. (Lexis Dep. 64:3-6, 108:11-15; *see also* Ex. B.)

### 3.   Experian Reports Bankruptcy Information Collected from PACER.

████████████████████████████████████████████████████

████████████████████████████████████████████ Based on the public information that Lexis collects, Experian reports consumer bankruptcies under Chapter 13 for up to seven years after the case is filed.[2] (Finneran Decl. ¶ 8.) Experian never reports the status of a Chapter 13 bankruptcy as being "withdrawn" at the outset because such a status is neither recognized by the Bankruptcy Code nor indicated in the public record. (*Id.* ¶ 14.) The Bankruptcy Code recognizes "dismissed" bankruptcies and the public record reflects that reported bankruptcies have been "dismissed." (*Id.*) So, to maximize accuracy, Experian uses the term "dismissed" in its consumer reporting when the bankruptcy court reports that a petition has been "dismissed." (*Id.*)

### 4.   Dispute Resolution Procedures.

A consumer may dispute information appearing in her credit report or consumer disclosure. (*Id.* ¶ 16.) Pursuant to its detailed procedures, Experian will review every dispute that it receives, and then conduct an internal reinvestigation and, if necessary, an external reinvestigation. (*Id.*) Experian will externally reinvestigate disputed bankruptcy information by contacting Lexis. (*Id.*)

Though exceedingly rare, Experian sometimes receives consumer disputes that request

---

[2] Experian actually begins purging Chapter 13 bankruptcy information approximately six years and nine months after the case is filed, which benefits the consumer by removing any bankruptcy reference earlier than required by law. (Finneran Decl. ¶ 8.)

Experian to report the status of a "dismissed" Chapter 13 bankruptcy as "withdrawn."[3]   (*Id.* ¶ 17.)   Pursuant to policy, once Experian receives documentation that adequately shows that the consumer voluntarily withdrew her bankruptcy, upon request Experian will add a statement to the consumer's file that notes that the bankruptcy was voluntarily withdrawn by the consumer. (*Id.*)   Bankruptcy courts do not report bankruptcies as withdrawn, and neither will Experian absent receipt of sufficient documentation. (*See id.* ¶¶ 14-15, 17.)

### C.   Plaintiff's Chapter 13 Bankruptcy Case.

#### 1.   The Bankruptcy Court Dismissed The Case.

On October 16, 2005, Plaintiff (then known as Andrea Holaway) and her then-husband Jason Holaway filed a joint voluntary petition for bankruptcy under Chapter 13. (Compl. & Ans. ¶ 6); *see also In re Holaway*, No. 05-50135 (Bankr. N.D. Ind.).   At that time, Plaintiff was employed as a teacher and her husband as a police officer.   (Deposition of Plaintiff Andrea Childress ("Pl. Dep.") 7:24-8:5, 43:20-24, attached as Ex. E.)   The couple was not in financial distress but filed for bankruptcy anyway because, as Plaintiff explained, someone erroneously told them that bankruptcy could wipe out their student loan debt. (*Id.* 44:3-12.)

On November 15, 2005, Plaintiff and her husband proposed a Chapter 13 plan, to which the bankruptcy trustee objected. *In re Holaway*, No. 05-50135, Dkts. 8, 16 (Bankr. N.D. Ind.). The bankruptcy court denied confirmation of the plan after a hearing on January 30, 2006. *Id.*, Dkt. 17.   In doing so, the court ordered Plaintiff and her husband to "file an amended Chapter 13 plan no later than February 27, 2006," or else their case would "be dismissed . . . without further notice or hearing." *Id.*   Plaintiff and her husband did not file a modified Chapter 13 plan by

---

[3] More often, consumers demand that Experian expunge the reporting of a "dismissed" bankruptcy entirely. (Finneran Decl. ¶ 18.)   When this occurs, and as the circumstances dictate, Experian sends the consumer a letter stating that under the law, Experian may properly report the bankruptcy. (*Id.*) This is what happened in the case of Plaintiff. (*See id.* ¶ 22 & Ex. 1 at EXP_0290.)

February 27, 2006 as ordered by the court, making their case due for summary dismissal.  (*See id.*; *see also* Pl. Dep. 50:9-18.)  But before the court acted, on March 2, 2006, Plaintiff and her husband filed a document captioned a "motion for dismissal," in which they "move[d] the Court to dismiss the Chapter 13 Petition for Bankruptcy pursuant to the United States Bankruptcy Code 1307(b)."  *In re Holaway*, No. 05-50135, Dkt. 19 (Bankr. N.D. Ind.); (Compl. & Ans. ¶ 7.) Their motion was unremarkable; Plaintiff and her husband just asked the court to do what it had already stated it was going to do anyway—dismiss the case.

On March 7, 2006, the Bankruptcy Court granted Plaintiff's motion and ordered that the case "is dismissed." *Id.*, Dkt. 20.  The court's order read, in pertinent part:

> O R D E R
>
> At South Bend, Indiana, on March 7, 2006.
>
> The debtors have filed a motion in accordance with 11 U.S.C. § 1307(b) seeking to dismiss this case, and it appears that the case has not been converted previously under 11 U.S.C. § 706, § 1112, or § 1208.
>
> IT IS ORDERED THAT:
>
> 1.      This chapter 13 case is dismissed. . . . .
>
> [Signed and Dated by Chief Judge Harry C. Dees, Jr.]

*Id.*  The case was closed on May 12, 2006 following the trustee's final report. *Id.*, Dkt. 23; *see also* 11 U.S.C. § 350(a).  The top left-hand corner of the PACER bankruptcy docket sheet reads "**DISMISSED, CLOSED**." (Finneran Decl. Ex. 4, at EXP_0005.)  The words "withdraw" and "withdrawn" do not appear on the bankruptcy court docket.  (Pl. Dep. 36:8-10 (stipulation).)

### 2.      Experian Reported That Plaintiff's Bankruptcy Case Was Dismissed.

From 2005 to 2012, Experian's credit file about Plaintiff contained information about her bankruptcy case.  Specifically, from the time her bankruptcy was dismissed in 2006, until August 2012, her consumer disclosures have stated in the Public Records section, in relevant part:

> "Chapter 13 bankruptcy dismissed"
> "US BKPT CT IN SOUTH BEND"
> "Address:  224 US COURTHOUSE 204 S, SOUTH BEND, IN 46601"
> "Identification Number:  0550135HCD"
> "Responsibility: Joint"  "Claim amount: $0"  "Liability amount: $0"

(*See, e.g.*, Finneran Decl. Ex. 1, at EXP_0025, 0077, 0242.)

### D.   Plaintiff's Two Disputes With Experian.

#### 1.   The July 2009 Dispute.

In a July 14, 2009 letter, Plaintiff through counsel demanded that Experian completely remove any references to her bankruptcy from her credit file.  (Pl. Dep. 94:2-8; Finneran Decl. Ex. 4, at EXP_0002-0012.)  Plaintiff never requested that Experian report her bankruptcy as "withdrawn," a word she never even mentioned in the letter; she instead sought wholesale deletion.  (*Id.*; Finneran Decl. Ex. 4, at EXP_0002-0012.)

Instead, Plaintiff's counsel argued in the July 2009 letter that reporting the bankruptcy at all violates 15 U.S.C. § 1681c(a)(1) because the case was voluntarily dismissed and "it is as if the bankruptcy never existed."  (Finneran Decl. Ex. 4, at EXP_0004.)  Reporting the bankruptcy, her counsel wrote, unfairly suggests that a Chapter 13 plan was confirmed when "[t]o be clear, this case was dismissed before a plan was confirmed and before a final judgment was entered."  (*Id.* at EXP_0003 (emphasis added).)  The letter enclosed a computer print-out of the bankruptcy court docket.  (*Id.* at EXP_0005-0009.)  Plaintiff's letter was at odds with the FTC's directive that dismissed bankruptcies must be reported as dismissed.  *See* Fed. Trade Comm'n, *Statement of General Policy or Interpretation, Commentary on the Fair Credit Reporting Act*, 16 C.F.R. Part 600, Appx., 55 Fed. Reg. 18804-01, 18821 (May 4, 1990) (stating that "if a reported bankruptcy has been dismissed, that fact should be reported").

Experian responded to Plaintiff on August 12, 2009, stating in pertinent part:  "[T]he fact that the case was documented allows it to appear on your personal credit report. . . . ."  (Finneran

Decl. Ex. 1, at EXP_0290.)  Plaintiff received and read Experian's response.  (Pl. Dep. 93:2-13.)

### 2.      The August 2012 Dispute.

On August 16, 2012, two months before filing this lawsuit, six months *after* filing an identical lawsuit against another CRA, Trans Union (12-cv-00184 (S.D. Ind.)), and more than three years after her initial dispute, Plaintiff submitted a second dispute, this time through Experian's website.  Plaintiff did not include any documentation whatsoever and instead stated in the online form only:   "MY BANKRUPTCY WAS NOT DISMISSED.    IT WAS VOLUNTARILY WITHDRAWN PRIOR TO PLAN APPROVAL."[4]  (Finneran Decl. Ex. 2, at EXP_0560.)  That same day, per its standard practice, Experian contacted Lexis to confirm the accuracy of the disputed bankruptcy record.  (*See id.* Ex. 3, at EXP_0847.)

After Experian contacted Lexis, but before any investigation had been completed, Experian's systems automatically purged all references to Plaintiff's bankruptcy from her credit file.  (*See id.* ¶ 23.)  This happened because it would soon be seven years since the bankruptcy was filed.  (*See id.*)  On August 24, 2012, Lexis confirmed that the bankruptcy information was accurate.  (*See id.* Ex. 3, at EXP_0847.)  Experian then informed Plaintiff that the bankruptcy no longer appeared on her credit file.  (*Id.* Ex. 1, at EXP_0294-0305.)  Plaintiff testified at deposition that having the bankruptcy purged completely was the best possible result.  (Pl. Dep. 65:14-18, 66:2-3.)

## III.    PLAINTIFF'S CLAIMS AGAINST EXPERIAN.

On October 19, 2012, Plaintiff filed this putative class action against Experian.[5]  Her

---

[4] Plaintiff's statement was patently false.   Contrary to what she wrote in the dispute, her bankruptcy was, in fact, dismissed.  *Cf. In re Holaway*, No. 05-50135, Dkt. 20 (Bankr. N.D. Ind.) (bankruptcy court's order dismissing case).

[5] Plaintiff also named an Equifax affiliate, CSC Credit Services, Inc., as a defendant, but voluntarily dismissed CSC after learning that Equifax, not CSC, maintained Plaintiff's file.

Complaint has three counts, each predicated on the same basic allegations.   In short, Plaintiff contends that Experian should have reported her bankruptcy case as "withdrawn"—not "dismissed"—and should have also reported whether the bankruptcy was "withdrawn before or after the court approved a Chapter 13 plan." (Compl. ¶¶ 70, 78, 85.)

Experian's failure to do so, she claims, was in willful violation of the bankruptcy reporting requirement of § 1681c(d)(1), and "was caused by [Experian]'s failure to follow reasonable procedures to ensure maximum possible accuracy" of bankruptcy reporting, in willful violation of § 1681e(b).   (Compl. ¶¶ 70-77 & 85-89 (Counts I & III).)   Plaintiff additionally claims that Experian "failed to conduct a reasonable reinvestigation" of Plaintiff's dispute to determine "whether the disputed information was inaccurate," in willful violation of § 1681i. (*Id.* ¶¶ 78-84 (Count II).)

Critically, Plaintiff sues *only* for willful violations of the FCRA, for which she can recover statutory damages, and brings no claims for simple negligence, for which she could recover actual damages.  15 U.S.C. §§ 1681n, 1681o.  This is perhaps not surprising.  Although willfulness is more difficult to prove, Plaintiff was not actually harmed by reporting her bankruptcy as "dismissed" rather than "withdrawn."[6]

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if

---

[6] To be sure, it was the *filing* of Plaintiff's bankruptcy that negatively affected her credit, not the linguistic semantics surrounding the dismissal. (*See* CBC Innovis Report on Plaintiff, at p.8, attached as Ex. F, stating Plaintiff's credit score was affected by, among other factors, "PUBLIC RECORD OR COLLECTION FILED."). As one court has explained, there is "no question that a reported bankruptcy filing can, and will, damage a consumer's credit rating." *In re Dick*, No. 05-80347, 2006 WL 6544157, at *3 (Bankr. N.D. Tex. May 19, 2006) (citing 15 U.S.C. § 1681c(a)(1)); Peter Alexander, *Identity Theft and Bankruptcy Expungement*, 77 AM. BANKR. L.J. 409, 410 (Fall 2003)).  And, of course, the mere fact that Plaintiff moved to dismiss a case that the court had already stated was going to be dismissed has no relevance whatsoever to a credit grantor.

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 647 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). Viewing "the evidence in the light most favorable to the nonmoving party, . . . [a] genuine issue of material fact exists only where there is enough evidence that a reasonable jury could return a verdict in favor of the non-moving party." *Collins v. Am. Red Cross*, 715 F.3d 994, 997 (7th Cir. 2013).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted).

## ARGUMENT

### I.   PLAINTIFF CANNOT ESTABLISH ANY OF HER CLAIMED VIOLATIONS OF THE FCRA.

Plaintiff's theory of liability rests on a false distinction between "dismissed" and "withdrawn." She says that her bankruptcy was "withdrawn," not "dismissed," and that Experian violated the FCRA by reporting it as "dismissed." But, as explained below, Plaintiff's theory of liability is legally defective for numerous independent reasons: (1) she never triggered the bankruptcy reporting statute on which she predicates all of her claims; (2) even if she did, Experian complied with the statute by accurately reporting her bankruptcy as "dismissed"; and (3) Experian cannot be liable for reporting precisely what the federal docket said.

### A.      Plaintiff Never Triggered Any Bankruptcy Reporting Obligation.

Plaintiff's claims fail at the outset because she never triggered the statute that underpins all of her claims.   Section 1681c(d)(1) requires a CRA to report that a bankruptcy case was withdrawn "upon receipt of documentation certifying such withdrawal." 15 U.S.C. § 1681c(d)(1).  This clause (which Plaintiff's Motion for Class Certification, Dkts. 69, 79, quotes once, and only once, and never analyzes) is significant to the meaning and application of the statute as a whole.  As the Supreme Court has long recognized, courts have a "duty 'to give effect, if possible, to every clause and word of a statute.'"  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)); *see also Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350, 1358 (2012) (refusing to construe workers' compensation statute in a manner that would render sub-provision "entirely superfluous"); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (citation omitted)).

This clause provides that a CRA's duty to report a "withdrawn" bankruptcy will depend on whether the CRA has first received "documentation certifying such withdrawal."  15 U.S.C. § 1681c(d)(1). In particular, Congress' use of the word "upon" makes any preceding requirement entirely conditional.  *E.g.*, *United States v. Zucca*, 351 U.S. 91, 94 (1956).  Thus, Experian had no statutory obligation to do anything *unless* Plaintiff provided "documentation certifying such withdrawal." 15 U.S.C. § 1681c(d)(1); *accord Harris v. Experian Info. Servs.*, No. 06-cv-1808, Dkt. 201, at 11 (D.S.C. June 30, 2009) (attached as Ex. G) (stating that § 1681c(d)(1) imposes "no obligation on the CRA to take steps to procure information not

provided to it").[7]

Here, there is no genuine dispute that Plaintiff never provided any certified documentation to Experian.  As her counsel has said, "She didn't send any documents to anyone." (Pl. Dep. 69:8-10.)  Plaintiff indeed provided no documentation whatsoever with her 2012 Internet dispute (Finneran Decl. ¶ 23), and her 2009 written dispute—which requested only that the bankruptcy be expunged from her Experian file, *not* that it be reported as "withdrawn"— included only an uncertified print-out of the face of the federal bankruptcy docket, which regardless did not even contain the word "withdrawn" or include any certification (*see id.* ¶ 22; Pl. Dep. 36:8-10).

Plaintiff may point out that the statute does not define the phrase "certifying," and that is true.  But the Federal Bankruptcy Rules do, and myriad other sources of federal law do, too.  *See, e.g.*, Fed. R. Evid. 902(4) (certified copies of public records) and (2) (signature).  Under Federal Bankruptcy Rule 5006, for example, "The clerk shall issue a certified copy of the record of any proceeding in a case under the Code or of any paper filed with the clerk on payment of any prescribed fee." Fed. R. Bankr. P. 5006.  The bankruptcy court in Northern District of Indiana, where Plaintiff filed for bankruptcy, will certify copies of bankruptcy documents for $11.00.[8]

At a minimum, certification must mean more than a computer print-out of information purportedly from a federal court—especially when that print-out did not even indicate that the

---

[7] *Accord* Consumer Financial Protection Bureau, *CFPB Supervision and Examination Manual*, at p. 2 (Procedures 11) (V. 2, Oct. 2012) (stating that CRAs must include in consumer reports "[t]he fact that the bankruptcy action has been withdrawn before a final judgment, if the entity has received documentation so certifying"), *available at* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf (last visited Feb. 11, 2014) (excerpt attached as Ex. H); Jacqueline S. Akins, *Fair Credit Reporting—The New Look*, 52 CONSUMER FIN. L.Q. REP. 324, 326 (1998) ("The withdrawal of a bankruptcy prior to 'a final judgment' is to be included in the report once the agency receives documentation certifying the withdrawal.").

[8] *See* "Statutory Filing Fees and Miscellaneous Fees," U.S. Bankruptcy Court for the Northern District of Indiana, *available at* http://www.innb.uscourts.gov/pdfs/statutoryandmiscellaneousfees.pdf.

bankruptcy was withdrawn, let alone even purport to be certified.  (Pl. Dep. 36:8-10, 94:2-8; Finneran Decl. Ex. 4, at EXP_00002-12); *see also* BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "certify" as:  "1. To authenticate or verify in writing.  2. To attest as being true or as meeting certain criteria.").

Because Plaintiff plainly did not provide the required documentation certifying withdrawal, she never triggered any obligation under the statute.  *Cf. Harris v. Experian Info. Servs.*, No. 06-cv-1808, Dkt. 201, at 11-12 (D.S.C. June 30, 2009) (Ex. G) (granting summary judgment for Experian where plaintiff claimed a violation of 15 U.S.C. § 1681e(b) based on Experian's lack of procedures to affirmatively collect certain credit information that the FCRA did not require a CRA affirmatively collect; concluding that such a claim "does not state a cognizable violation of § 1681e(b)'s 'reasonable procedures' requirement").

**B.      The FCRA Does Not Require Experian to Use the Word "Withdrawn."**

Even if Plaintiff triggered the statute, her claim that Experian violated it by reporting her bankruptcy as "dismissed" fails as a matter of law.  Section 1681c(d)(1) requires that, "[i]f any [bankruptcy case] is withdrawn by the consumer before a final judgment, the consumer reporting agency shall include in the report that such case or filing was withdrawn . . . ." 15 U.S.C. § 1681c(d)(1).  Plaintiff's reading of the statute to require a CRA to literally use the word "withdrawn," when that term is not recognized by the bankruptcy courts, lest violate the statute, is far afield, if not absurd.

The FCRA uses the term "withdrawn" or "withdrawal" a total of three times—all within § 1681d(c)(1).  *See* 15 U.S.C. § 1681 *et seq.*  The term is never explained, and looking to bankruptcy law is no help either.  "The Bankruptcy Code does not speak of a right to withdraw a petition." *In re Ellis*, 406 B.R. at 739.  There is no such thing.  *Id.* (construing attempt to

withdraw petition as request for dismissal); *see generally* 11 U.S.C. §§ 101-1532.[9]  The

Bankruptcy Code instead employs the word "withdrawn" in markedly different contexts. *E.g.*,

Fed. R. Bankr. P. 5011 (withdrawal of proceedings from bankruptcy court to a district court);

Fed. R. Bankr. P. 3006 (withdrawal of claims by creditors).)

Without any basis in bankruptcy law, and lacking a statutory definition, the meaning of

the word "withdrawn" is ambiguous.[10]  *Cf. United States v. Masters*, 924 F.2d 1362, 1368 (7th

Cir. 1991) ("'withdrawal' is a term of art in the law of conspiracy").  Left with ambiguity and

without any meaningful legislative history (*see supra* page 5), the Seventh Circuit directs the

inquiry to the dictionary and common usage. *E.g.*, *Newsom v. Friedman*, 76 F.3d 813, 817 (7th

Cir. 1996).  The ordinary definition of withdraw is "to take back."  BLACK'S LAW DICTIONARY

(9th ed. 2009); *accord State v. Strickland*, 400 A.2d 451, 453-54 (Md. Ct. Spec. App. 1979);

*Lowry v. McMillan*, 8 Pa. 157, 163 (1848) (stating that the term "withdraw" "has no technical

legal meaning" and that the "phrase 'withdraw a suit'" is "an expression used in common

parlance, as equivalent with discontinuance").

In light of the ordinary meaning of the word, the only plausible construction of the FCRA

provision is to interpret "withdrawn" as synonymous with "dismissed."[11]  This is for at least

---

[9] Most analogously, Chapter 13 of the Bankruptcy Code allows the debtor to seek dismissal, which the bankruptcy court must still allow. *See* 11 U.S.C. § 1307(b) ("On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter.").  This is precisely the statute that Plaintiff invoked in requesting the dismissal of her bankruptcy. *See In re Holaway*, No. 05-50135, Dkt. 19 (Bankr. N.D. Ind.).  Notably, the concept of "withdrawal" is absent from this statute.  Instead, the debtor requests that the court dismiss the case—the debtor cannot simply remove the case from the docket without court action.

[10] Courts have struggled with the meaning of withdrawn in other contexts, too. *E.g.*, *Prudence Mutual Casualty Co. v. Sturms*, 185 N.E.2d 366, 368 (Ill. App. 1962) ("The word 'withdrawn' has many meanings"); *Saunderson v. Gary Goldberg & Co.*, 899 F. Supp. 177, 179 (S.D.N.Y. 1995) ("We cannot decipher the meaning of the [statement] that Saunderson is permitted to withdraw her claims.").

[11] *Accord Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441 (2012) (interpreting "actual damages" to mean "special damages" because the terms can be used interchangeably); *In re Momenta, Inc.*, 455

three reasons, all of which harmonize the FCRA with the Bankruptcy Code. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005) ("Statutory language has meaning only in context.").

*First*, the concept of withdrawing a case does not exist in Chapter 13. *E.g.*, *In re Ellis*, 406 B.R. at 739. As a matter of bankruptcy procedure, the only way that a debtor may take back her petition is by obtaining a court order of dismissal. *See* 15 U.S.C. § 1307(b). *Cf. Woodman v. Concept Constr., LLC (In re Woodman)*, 698 F.3d 1263, 1266-67 (10th Cir. 2012) (holding that debtor's notice of withdrawal of her appeal had "no legal effect" absent a court order of dismissal); *Stern v. Barnett (In re Stern)*, 452 F.2d 211, 214 (7th Cir. 1971) (referring to debtor's request to withdraw action as "dismissal" requiring consideration by bankruptcy referee). Congress presumably incorporated existing bankruptcy practice—dismissal upon request—into the FCRA. *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 645 (1981).

*Second*, where it appears in bankruptcy case law, albeit rarely, the word "withdraw" is used interchangeably with "dismiss." *E.g. McPhee v. Chilton Corp.*, 468 F. Supp. 494, 495 (D. Conn. 1978) (stating that previously the bankruptcy petition "was permitted to be withdrawn, and the matter was dismissed"). Indeed, courts routinely construe misnomer motions to withdraw as motions to dismiss. *See, e.g., Beery v. Turner (In re Beery)*, 680 F.2d 705, 709 (10th Cir. 1982); *In re Ellis*, 406 B.R. at 739.

*Third*, there is no indication that Congress intended the statute to govern anything other than an obligation to report that a bankruptcy petition has been dismissed. Reporting a case as

---

(continued...)

B.R. 353 (Bankr. D.N.H. 2011) (received means receipt); *United States v. Peace*, 48 F. 714, 716 (C.C.E.D.N.C. 1892) (noting that a statute "uses the word 'withdraw' as the equivalent of 'remove'").

withdrawn would be both inaccurate as a matter of procedure and confusing to potential lenders, as the concept of "withdrawal" is foreign to the Bankruptcy Code.  A dismissal—not an attempted withdrawal—has consequences in the lending world, *see* 15 U.S.C. § 1681(a)(1) ("The banking system is dependent upon fair and accurate credit reporting."), as does the filing of a consumer bankruptcy.[12]

For all of these reasons, the notion that Congress intended to require Experian, or any CRA, to report a particular word that has no relationship to the bankruptcy is entirely implausible.  *Cf. Byas v. United States*, 182 F.2d 94, 98 (D.C. Cir. 1950) (rejecting an interpretation that "would require a judge to always use the word 'withdraw'").  In this case, Experian reported precisely what the bankruptcy court reported—that Plaintiff's bankruptcy was "dismissed."  Not only was this reported status, in fact, true, but the statute requires nothing more.  Because Experian complied with the statute and accurately reported the status of Plaintiff's bankruptcy case,[13] Plaintiff's claims fail as a matter of law.

---

[12] *See, e.g.*, Federal Trade Commission, *Building a Better Credit Report*, at 12 (Aug. 2011) ("Personal bankruptcy generally is considered the debt management option of last resort because the results are long-lasting and far-reaching."), *available at* http://www.consumer.ftc.gov/articles/pdf-0032-building-a-better-credit-report.pdf (last visited Feb. 11, 2014) (attached as Ex. I).

[13] It is well established that a *prima facie* case under § 1681e requires a plaintiff to prove that the information published by the CRA was in fact inaccurate. *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (citing *Kuehling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the [CRA's] report or reinvestigation, [plaintiff] cannot establish that [the CRA] violated the FCRA—either § 1681e(b) or § 1681i(a)(1)(A).")). Numerous federal courts have held that failure to demonstrate an inaccuracy on a consumer report is fatal to a consumer's § 1681e(b) "reasonable procedures" claim. *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004) (to state a claim under § 1681e(b) a consumer must allege "that a [CRA] prepared a report containing 'inaccurate' information"); *DeAndrade*, 523 F.3d at 66 ("[T]o prevail on a § 1681e(b) claim, a plaintiff must demonstrate that his or her credit report sports an *actual* inaccuracy."); *Beyer v. Firstar Bank N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (affirming summary judgment where plaintiff "failed to present any evidence . . . that the report was false"); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (per curiam) (a plaintiff cannot prevail "without proving that the information in question was inaccurate"); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a prima facie violation of [the FCRA] . . . a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information.").

### C. The FCRA Does Not Require Experian to Report Any Other Details About the Bankruptcy.

Plaintiff also suggests that Experian should have reported that the dismissal was "voluntary" and whether it occurred "before or after plan confirmation." Not so. Nothing in the FCRA requires the reporting of this type of information. *See* 15 U.S.C. § 1681c(d)(1). Nor could it—this type of information is not available, short of perhaps manually retrieving and sifting through millions of court filings, and then coding them according to an examiner's best legal interpretation or guess at how, when, and why the dismissal came about. *See Baker v. Equifax Info. Servs.*, 346 F. App'x 219, 220 (9th Cir. 2009) ("The Fair Credit Reporting Act does not obligate credit reporting agencies . . . to report information they do not possess.").

On the issue of the "voluntary" nature of the dismissal many bankruptcy courts, like the one in Plaintiff's case, enter orders of dismissal without stating whether the dismissal was on motion of the debtor. To figure out if it was, Experian would have to go behind the docket and determine whether the debtor filed a motion to dismiss and if so, whether the court granted the motion. Not only would that be a monumental undertaking, but it would be imprecise. *E.g.*, *In re Jacobs*, 43 B.R. 971 (Bankr. E.D.N.Y. 1984) (denying debtor's motion to dismiss under § 1307(b) but *sua sponte* dismissing for another reason); (*see also* Lexis Dep. 105:22-106:6, 108:2-15). Query, for example, whether these dismissals should be reported as "voluntary":

- The Bankruptcy Court *sua sponte* dismisses the case for improper venue during the pendency of the debtor's motion to dismiss under 1307(b).

- The Bankruptcy Court *sua sponte* dismisses the action for improper venue in the same order denying the debtor's motion to dismiss under 1307(b).

- The Bankruptcy Court dismisses the action on debtor's motion to dismiss under 1307(b) and *sua sponte* states in the alternative that dismissal is warranted for improper venue.

Similarly on the issue of timing, Plaintiff says that Experian should have made a

distinction on her consumer report whether the dismissal occurred "before or after the bankruptcy court confirmed a Chapter 13 plan." (Compl. ¶¶ 70, 78, 85.) Such an obligation, however, is absent from bankruptcy law, bankruptcy court practice, and the FCRA.

*First*, the statute governing dismissals makes no such distinction. *See* 11 U.S.C. § 1307(b). *Second*, bankruptcy courts, like the one in Plaintiff's case, do not ordinarily distinguish between motions to dismiss before or after plan confirmation. *E.g.*, *In re Holaway*, No. 05-50135 (Bankr. N.D. Ind.) (granting motion to dismiss pursuant to § 1307(b) before confirming plan, though after denying confirmation of plan). The outcome is the same: the court granted the debtor's motion to dismiss. Whether the dismissal occurred before or after plan confirmation is irrelevant in bankruptcy practice.

*Third*, the FCRA is silent as to "plan confirmation." Instead, the FCRA merely states, in pertinent part, that *if* a bankruptcy is "withdrawn" (meaning, dismissed) before a "final judgment," *then* the CRA must "report that such case or filing was withdrawn" (meaning, dismissed). 15 U.S.C. § 1681c(d)(1). There is plainly no requirement to report the timing of the dismissal in relation to the "final judgment." Nor is there any way to accurately do so. Bankruptcy dockets do not report it, and more importantly, the entire notion of a "final judgment" in bankruptcy is elusive and imprecise. These circumstances doom Plaintiff's attempt to peg "final judgment" *exclusively* to "plan confirmation." Though plan confirmation may be a final judgment, it is not always so. *See Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 380 (D.N.J. 2006) ("Plaintiffs' confirmed Chapter 13 plan was not a final judgment"). And the *rejection* of a Chapter 13 plan can be a final judgment too. *See, e.g.*, *In re Salem*, 465 F.3d 767, 773 (7th Cir. 2006) ("order dismissing the case and denying confirmation of Salem's Chapter 13 plan was a final judgment."); *Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229, 234 (B.A.P. 1st

Cir. 2001) (per curiam) (holding that an order denying plan confirmation becomes final where the debtors did not seek to confirm an alternative plan).

### D.   Experian Cannot Be Liable For Reporting What The Public Record Said.

In the end, even if Plaintiff could show some sort of inaccurate reporting (which she cannot), Experian is not liable for it.   The Seventh Circuit has made clear that "a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994) (stating that "reliance on official court records is unlikely to lead to inaccurate credit reporting except in isolated instances"). "Requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the result of the underlying action would be unduly burdensome and inefficient." *Id.* at 285-86.   Until a consumer notifies a CRA of a potential inaccuracy as to a court record, "the credit reporting agency may rely on the accuracy of public court documents in preparing a credit report without being subject to liability under the FCRA."[14] *Id.* at 286.

To impose liability on Experian in this case would be to indict the entire federal docketing system and to question the critical role that public records play in the consumer credit market.   Numerous courts have rebuffed consumers' attempts to saddle CRAs with responsibility for the nation's public records system.   *See, e.g., Gonzalez v. Experian Info. Solutions, Inc.*, No. 04-CV-00912, 2005 WL 925657, at *3 (D. Utah Apr. 20, 2005) (dismissing claim arising out of Experian's reporting of accurate information from the bankruptcy court docket); *Grays v. Trans*

---

[14] Congress recognized this in § 1681c(d)(1) by requiring "documentation certifying such withdrawal."

*Union Credit Info. Co.*, 759 F. Supp. 390, 393 (N.D. Ohio 1990) ("[The CRA] was merely reporting what was on the public record, and has complied with the provisions listed in 1681c").

## II.   PLAINTIFF CANNOT ESTABLISH WILLFULNESS.

Critically, Plaintiff has sued Experian *only* for willful violations. *See* 15 U.S.C. § 1681n. Thus, even if the Court disagrees with everything above, and agrees to read the phrase "receipt of documentation certifying such withdrawal" out of the statute, and further agrees with Plaintiff's preferred definitions of previously undefined terms ("withdrawn" and "final judgment"), Experian is still entitled to summary judgment. Simply put, Plaintiff cannot establish that any claimed violations were willful. Because each of her claims is premised on an allegedly willful violation of the FCRA, all of them fail.

### A.   The Requirement of Willfulness.

The FCRA is not a strict liability statute. Where, as here, the plaintiff seeks statutory damages under § 1681n, she must establish the element of willfulness. A defendant acts in willful violation of the FCRA where it acts in "reckless disregard of [its] statutory duty." *Safeco*, 551 U.S at 57, 68. This is an entirely objective inquiry. *See Van Straaten v. Shell Oil Prods. Co.*, 678 F.3d 486, 492 (7th Cir. 2012) (Cudahy, J., concurring). As the Supreme Court has explained, a CRA does not act in reckless disregard of the FCRA unless its action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

Objective reasonableness is judged against the statutory text and any judicial or administrative guidance that existed at the time of the alleged violation. *See id*. at 69-70; *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726-27 (7th Cir. 2008). In the absence of

interpretive guidance that "might have warned it away from the view it took," a CRA's interpretation of "less-than-pellucid statutory text" cannot be "objectively unreasonable, and [thus] falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70.   This is so even if the CRA's "construction of the statute turns out to be mistaken." *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803 (7th Cir. 2010).

In *Murray*, for example, the Seventh Circuit affirmed summary judgment for defendant Cingular, finding that even though Cingular violated the FCRA, the plaintiff could not prevail because he could not prove willfulness.   523 F.3d at 726-27.   The court found that Cingular violated 15 U.S.C. § 1681m(d) of the FCRA because it failed to use "clear and conspicuous" text in written solicitations made to consumers. *See id.* at 725.   The court also found that this violation was not willful, however, because the statute did not define the term "conspicuous," the FTC had not issued any guidance, and appellate decisions were unhelpful. *See id.* at 726. Without the benefit of these other sources to shed light on the meaning of the FCRA provision at issue, Cingular's interpretation of the statute, and mailings governed by the statute, "did not take a risk 'substantially greater' than is associated with ordinary carelessness." *Id.* at 727.   The court affirmed summary judgment for Cingular. *Id.*

**B.**   **Experian's Conduct, Policies, and Procedures Were Objectively Reasonable.**

At the heart of this case is a statute that is confusing at best.   Section 1681c(d)(1) requires a CRA to report a bankruptcy that is "withdrawn" before "final judgment" as "withdrawn," if the CRA receives "documentation certifying such withdrawal."   15 U.S.C. § 1681c(d)(1).   But the FCRA does not define any of these critical words and phrases.   Nor does the Bankruptcy Code or other pertinent law. (*See supra* § I.B.)   Confounding the confusion, there is no interpretive

guidance, either.  Experian is unaware of any judicial decision interpreting these words as used in the statute.  Neither the FTC nor the CFPB has clarified the meaning of 15 U.S.C. § 1681c(d)(1) through regulations or other commentary.

Experian was left in an untenable situation.  If Experian reports a "dismissed" bankruptcy as "withdrawn," that would be inaccurate because the bankruptcy docket says something else.  It would also be misleading because the term does not exist in bankruptcy law.  Yet if Experian reports the "dismissed" bankruptcy as "dismissed," like Experian did here, according to Plaintiff it risks running afoul of § 1681c(d)(1) that speaks in terms of "withdrawal."

Experian's policies and procedures are objectively reasonable in light of this confusing legal landscape.  They seek to balance accuracy, consumer protection, and the demands of commerce.  Because the term "withdraw" does not appear on the face of the bankruptcy docket, does not exist in bankruptcy law, and cannot be collected by Lexis, Experian reports "dismissed" bankruptcies as "dismissed."  Doing so avoids the need for subjective classifications of bankruptcies, and reflects well-established law that "withdraw" and "dismiss" are synonymous under the circumstances.  (*See supra* 18-21.)  Moreover, if Experian receives adequate documentation that a bankruptcy was "withdrawn by the consumer before final judgment," it can and does add a statement to the consumer's report reflecting that status.  (Finneran Decl. ¶ 17.)

Regardless of whether Experian's reading of the FCRA turns out to be correct, there can be no question that is was objectively reasonable.  In fact, there was nothing to warn Experian "away from the view that it took." *Safeco*, 551 U.S. at 70.  There is nothing in the FCRA, the Bankruptcy Code, or any authority from the courts or from the FTC or CFPB suggesting that Plaintiff's view of the statute is correct, let alone a plausible interpretation of § 1681c(d)(1) given its context within the FCRA and relation to the Bankruptcy Code.  To the contrary, Experian's

approach is consistent with the only guidance the FTC has ever published that even remotely impacts this area. The FTC has noted that, with regard to dismissed bankruptcies, Experian has an obligation to report the dismissal. Fed. Trade Comm'n, *Statement of General Policy or Interpretation, Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. at 18821 (stating that "if a reported bankruptcy has been dismissed, that fact should be reported"); *cf.* Ex. H, at 2 (Procedures 11).)

As in *Safeco*, "[g]iven this dearth of guidance and the less-than-pellucid statutory text, [Experian]'s reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70; *see also Shlahtichman*, 615 F.3d at 803 (affirming summary judgment for defendant because there was "no contrary opinion from a court of appeals or federal agency suggesting that the company's understanding of the statute is wrong; and even if its construction of the statute turns out to be mistaken, it is objectively reasonable nonetheless"); *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 377-78 (3d Cir. 2012) (affirming dismissal of complaint where defendant's "interpretation of § 1681c(g)(1) has some foundation in the text" as the phrase at issue "is not defined in the statute itself, just as the statute in *Safeco* was silent as to the point from which to measure an increase in a charge for insurance" and finding that defendant's interpretation "was at least sufficiently persuasive to convince the District Court to adopt it").

For these reasons, Plaintiff cannot establish that Experian willfully violated the FCRA. Experian is therefore entitled to summary judgment on all claims. *Cf. Van Straaten*, 678 F.3d at 491 (concluding that defendant did not willfully violate the FCRA; "This means that it cannot be held liable under § 1681n. This also makes it unnecessary for us to decide whether [defendant] violated the Act at all.").

### III.   PLAINTIFF'S REINVESTIGATION CLAIMS FAIL AS A MATTER OF LAW ON INDEPENDENT GROUNDS.

Plaintiff claims that in response to her disputes in July 2009 and August 2012, Experian failed to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i.  Whether based on her July 2009 dispute or her August 2012 dispute, Plaintiff's reinvestigation claims fail as a matter of law.

Any claim based on the July 2009 dispute fails.  *First*, the claim is untimely; the FCRA has a two-year limitations period, *see* 15 U.S.C. § 1681p(1), but Plaintiff waited more than three years to file suit after learning of the results of Experian's investigation.[15]  (Pl. Dep. 93:2-13; Dkt. 1.)  She admits that she received and read Experian's response to her dispute in August 2009 (Pl. Dep. 93:2-13), but she did not file her Complaint until October 19, 2012 (Dkt. 1).  Thus, her claim is time-barred.

*Second*, Plaintiff's dispute letter asked for the complete deletion of the bankruptcy, claiming that the voluntary dismissal rendered "it is as if the bankruptcy never existed." (Finneran Decl. Ex. 4, at EXP_0004.)  Experian responded by explaining that "the fact that the case was documented allows it to appear on your personal credit report." (Finneran Decl. Ex. 1, at EXP_0290.)  Taking back the filing, by way of dismissal, does not undo the fact that the bankruptcy was filed:  "There is no question that notice of a bankruptcy filing can remain on a consumer's credit report for up to ten years.  There is also no question that a reported bankruptcy

---

[15] *See, e.g.*, *Hancock v. Charter One Mortg.*, No. 07-15118, 2008 WL 2246042, at *2 (E.D. Mich. May 30, 2008) (dismissing FCRA claim as time-barred, where plaintiffs knew of errors on their credit report more than two years prior to filing suit); *Shannon v. Experian Credit Co.*, No. 08-11281, 2008 WL 2478324, at *3 (E.D. Mich. June 17, 2008) (same); *Bittick v. Experian Info. Solutions, Inc.*, 419 F. Supp. 2d 917, 918-19 (N.D. Tex. 2006) (same); *Bermudez v. Equifax Info. Servs., LLC*, No. 07-CV-1492, 2008 WL 5235161, at *2 (M.D. Fla. Dec. 15, 2008) (granting summary judgment on §§ 1681e(b) and 1681i claims, reasoning that claims arising more than two years before suit was filed were time-barred because plaintiff was aware of the inaccurate information more than five years before filing suit).

filing can, and will, damage a consumer's credit rating." *In re Dick*, No. 05-80347, 2006 WL 6544157, at *3 (Bankr. N.D. Tex. May 19, 2006) (citing 15 U.S.C. § 1681c(a)(1); Peter Alexander, *Identity Theft and Bankruptcy Expungement*, 77 AM. BANKR. L.J. 409, 410 (Fall 2003)).

*Third*, the claim fails on the merits because Experian's investigation was reasonable.  In July 2009, Plaintiff sought only that her bankruptcy information be deleted entirely from her credit file. (Pl. Dep. 94:2-8.)  Experian verified that Plaintiff had in fact filed for bankruptcy and explained to her that the case is properly reported even though it did not result in a discharge of indebtedness.  (Finneran Decl. Ex. 1, at EXP_0290.)  This response specifically addressed her dispute and is plainly reasonable as a matter of law.

Any claim based on the August 2012 dispute is likewise defective.  Using Experian's online dispute tool, Plaintiff disputed that her "bankruptcy was not dismissed" (*see* Finneran Decl. Ex. 2, at EXP_0560), but she offered no supporting documentation whatsoever to trigger any action by Experian.  Though she takes aim at Experian's investigation, Plaintiff received precisely what she wanted, which is also what the FCRA explicitly allows:  wholesale deletion of the bankruptcy information from her credit file. *See* 15 U.S.C. § 1681i(a)(1)(A) (stating that in response to a dispute, the CRA may "delete the item from the file"); (Pl. Dep. 65:14-66:3.)  Per its standard procedures, Experian timely responded to Plaintiff's dispute with a consumer disclosure showing that the Bankruptcy no longer appeared on her credit file.  (Finneran Decl. Ex. 1, at EXP_0294-305.)  Accordingly, the claim fails as a matter of law. *E.g.*, *Moore v. First Adv. Enter. Screening Corp.*, No. 12-CV-00792, 2013 WL 1662959, at *8 (N.D. Ohio Apr. 17, 2013) (granting summary judgment for CRA where in response to reinvestigation request, CRA "deleted the information that was the subject of the dispute").

For all of these reasons, Experian is entitled to summary judgment on Plaintiff's claims under § 1681i for failure to reasonably reinvestigate.

## CONCLUSION

Experian respectfully requests that this Court enter summary judgment in its favor and dismiss all of Plaintiff's claims against it with prejudice.

Dated: February 12, 2014

Respectfully submitted,

/s/ Logan C. Hughes
Adam W. Wiers (*pro hac vice*)
Courtney E. Silver (*pro hac vice*)
JONES DAY
77 West Wacker Drive
Chicago, IL  60601-1692
Telephone:   (312) 782-3939
Facsimile:    (312) 782-8585
awwiers@jonesday.com
cesilver@jonesday.com

Logan C. Hughes (IN Attorney No. 24953-53)
REMINGER CO., LPA
3925 River Crossing Parkway, Suite 280
Indianapolis, IN 46240
Telephone:   (317) 663-8570
Facsimile:    (317) 663-8580
lhughes@reminger.com

*Counsel for Defendant Experian Information Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2014, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following at their e-mail address on file with the Court:

    Eric S. Pavlack
    Eric@PavlackLawFirm.com

    G. John Cento
    Cento@CentoLaw.com


                  */s/ Logan C. Hughes*
                  Attorney for Defendant Experian
                  Information Solutions, Inc.

## INDEX OF EXHIBITS

Exhibit

Declaration of Patricia Finneran ................................................................. A

PACER Frequently Asked Questions .............................................................B

Deposition of Kelly Pascual, *excerpts* ........................................................C

Deposition of Lexis 30(b)(6) Witness, *excerpts* ......................................... D

Deposition of Plaintiff Andrea Childress, *excerpts* ....................................E

CBC Innovis Report on Plaintiff ...................................................................F

*Harris v. Experian Info. Servs.*, No. 06-cv-1808,
    Dkt. 201 (D.S.C. June 30, 2009) ........................................................... G

Consumer Financial Protection Bureau, CFPB Supervision and Examination Manual
    (V. 2, Oct. 2012) ................................................................................. H

Federal Trade Commission, *Building a Better Credit Report* (Aug. 2011) ................................... I